## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AZUKA IWUCHUKWU | **COMPLAINT FOR DAMAGES** |
| | |
| | **Civil Action No.:** |
| Plaintiff, | |
| | **DEMAND FOR JURY TRIAL** |
| vs. | |
| | |
| ARCHDIOCESE FOR THE MILITARY SERVICES, | |
| | |
| and | |
| | |
| TIMOTHY P. BROGLIO | |
| | |
| Defendants. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** Plaintiff Azuka Iwuchukwu ("Plaintiff"), by and through his attorneys, for their causes of action against Defendants Archdiocese for the Military Services, and Timothy P. Broglio for violation of Plaintiff's constitutional rights, and in support thereof, avers as follows:

## NATURE OF THE CASE

1. This action arises from Defendants' unlawful retaliation against Plaintiff by revoking his endorsement and faculties to serve as a chaplain for the Delaware Department of Veterans Affairs.

2. The revocation of Plaintiff's faculties and endorsement was allegedly due to a false accusation of inappropriate contact with a patient while Plaintiff was employed at Georgetown University Hospital in Washington, D.C.

3. As a result of the false allegation and retaliatory actions of Defendants, Plaintiff lost his employment with the Delaware Department of Veterans Affairs and is unable to obtain employment as a Catholic Priest and/or Chaplain.

## THE PARTIES

4. Plaintiff is a citizen of the State of Delaware with an address located at 259 Christiana Road, New Castle, Delaware 19720.

5. Archdiocese for the Military Services, USA ("Archdiocese for the Military Services") is a non-profit corporation under the laws of the District of Columbia.

6. Timothy P. Broglio ("Archbishop Broglio") is a resident of Washington, D.C. who serves as the Archbishop for Archdiocese for the Military.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Archdiocese for the Military Services because the organization's principal place of business is located in the District of Columbia, and Plaintiff's claims against Archdiocese for the Military Services arises from conduct by the organization that took place within this jurisdiction.

8. The Court has personal jurisdiction over Archbishop Broglio because he conducts substantial business within this jurisdiction.

9. Venue is proper in this Court because a substantial portion of the events giving rise to this action took place within this jurisdiction. Specifically, Defendants unlawfully subjected Plaintiff to adverse employment action as a result of alleged actions that took place at Georgetown University Hospital in Washington D.C.

## FACTUAL ALLEGATIONS

10. Plaintiff was endorsed in 2006 to work as a Catholic Priest and/or Chaplain by the Archdiocese of Washington at Georgetown University Hospital in Washington, D.C.

11. At that time in 2006, Plaintiff received his faculties and endorsement to serve as a Catholic Priest through the Archdiocese of Washington.

12. In 2007, Plaintiff was assigned to minister to a 29-year-old female with the initial of J.V., who was admitted to Georgetown University Hospital as result of severe mental illness.

13. In 2011, Plaintiff received and accepted an employment offer with the Delaware Department of Veterans Affairs and left his employment at Georgetown University Hospital.

14. At that time in 2011, Plaintiff received his faculties and endorsement by Archdiocese for the Military Services which allowed him to be employed by the Delaware Department of Veterans Affairs.

15. In 2012, during the course of his employment with the Delaware Department of Veterans Affairs and while under the endorsement of Archdiocese for Military Services, Plaintiff brought an Equal Employment Opportunity Commission ("EEOC") claim against the Delaware Department of Veterans Affairs due to discrimination and a hostile work environment.

16. On or about February 26, 2008, Plaintiff received a letter from the President of Georgetown University Hospital with an enclosed letter from J.V., complimenting Plaintiff for the care that Plaintiff provided to J.V. (A true and correct copy of the Georgetown University Hospital President's letter and accompanying letter from J.V. is attached as" **Exhibit A**").

17. On or about August 17, 2018, more than 11 years since her last interaction with Plaintiff, J.V. reported for the first that she had been allegedly sexually abused by Plaintiff at Georgetown University Hospital while she was receiving inpatient mental services.

18. J.V. further alleged that she had been abused by Plaintiff at a campground in Erie, Pennsylvania.

19. J.V., from her own admission and from a well-documented history, suffered from severe mental illness.

20. On or about September 11, 2018, Plaintiff was informed by Archbishop Broglio that J.V. had made allegations of sexual abuse against him.

4

21. Shortly after September 11, 2018, Plaintiff was informed by Archdiocese for Military Services that his faculties and endorsement as a Catholic Priest and/or Chaplain were being revoked as a result of the alleged sexual abuse.

22. Archbishop Broglio reported the alleged sexual abuse by Plaintiff to civil law enforcement officials in Washington D.C. and in Pennsylvania.

23. Plaintiff, at all times relevant, denied any allegations of sexual abuse against J.V.

24. On December 19, 2018, Plaintiff, in order to corroborate his innocence of the alleged sexual abuse by J.V, paid for and conducted a polygraphy test.

25. The aforementioned polygraph test indicated no deception regarding Plaintiff's claim of innocence regarding J.V.'s allegations (A true and correct copy of Plaintiff's Polygraph test is attached as "**Exhibit B**").

26. Plaintiff provided the results of the polygraph test to the Archdiocese for the Military Services.

27. Civil law enforcement officials in Washington D.C. and Pennsylvania did not substantiate any of the alleged rape claims by J.V. and declined to prosecute Plaintiff.

28. Despite law enforcement's decision not to prosecute Plaintiff, Archbishop Broglio, in a letter dated October 15, 2019, put an impossible and unconstitutional burden on Plaintiff to have an "acquittal of the accusations" by civil authorities (A true and correct copy of Archbishop Broglio's letter is attached as "**Exhibit C**").

29. Archdiocese for Military Services, despite Plaintiff's request, refused to reinstate Plaintiff's faculties and endorsement.

30. As a result of the revocation of Plaintiff's faculties and endorsements, Plaintiff lost his employment with the Delaware Department of Veterans Affairs.

31. Plaintiff has been unable to obtain employment as a Catholic Priest and/or Chaplain due to the loss of his faculties and endorsement.

### COUNT 1- VIOLATION OF FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION

32. Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

33. The due process clause of the Fourteenth Amendment of the U.S. Constitution prohibits state actors from depriving individuals of "property" without due process of law.

34. Pursuant to the due process clause of the Fourteenth Amendment, Plaintiff enjoyed a constitutionally protected property right in his faculties and endorsement as a fundamental right entitled to legal protection.

35. Defendants deprived Plaintiff of his property right without due process.

36. As a direct and proximate result of Defendants' actions, Plaintiff's suffered the loss of his employment with the Delaware Department of Veterans Affairs, in violation of his rights under the Fourteenth Amendment of the United States Constitution.

WHEREFORE, Plaintiff respectfully prays that this Court enter the following relief:

A. Entry of a money judgments against in the amount of unpaid backpay accrued by Plaintiff since Defendants' retaliatory actions resulted in the loss of his employment the Delaware Department of Veterans Affairs.

B. An award of punitive damages against Defendants.

6

C. Reinstatement of Plaintiff's faculties and endorsement as a Catholic Priest and/or Chaplain.

D. An award of reasonable attorney's fees and costs incurred in pursuing this action;

E. An award of such relief as this court sees just and proper under the circumstances.

## COUNT 2- VIOLATION OF DC CODE. § 2-1402.61
### Coercion or Retaliation

37. Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

38. Plaintiff was unlawfully retaliated against by Archdiocese for Military Services as a result of his right to file an EEOC claim related to the discrimination he endured at the Delaware Department of Veteran Affairs.

39. The aforementioned retaliation includes, but is not limited to, refusing to restore Plaintiff's faculties and endorsements despite false and unsubstantiated sexual abuse allegations against Plaintiff.

40. As a result of losing his endorsements, Plaintiff has lost and has been unable to obtain employment as a Catholic Priest and/or Chaplain.

WHEREFORE, Plaintiff respectfully prays that this Court enter the following relief:

F. Entry of a money judgments against in the amount of unpaid backpay accrued by Plaintiff since Defendant's retaliatory actions resulted in the loss of his employment with the Delaware Department of Veterans Affairs.

G. An award of punitive damages against Defendants.

H. Reinstatement of Plaintiff's faculties and endorsement as a Catholic Priest and/or Chaplain.

I. An award of reasonable attorney's fees and costs incurred in pursuing this action;

J. An award of such relief as this court sees just and proper under the circumstances.

## COUNT 3- RESPONDEAT SUPERIOR

41. Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

42. At all times relevant, Archbishop Broglio was working within the time, space, and scope of their employment and/or agency with the Archdiocese for the Military Services.

43. As the principal of Archbishop Broglio, Archdiocese for the Military Services is liable for its agents' and/or employees' torts under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff respectfully prays that this Court enter the following relief:

A. Entry of a money judgments against in the amount of unpaid backpay accrued by Plaintiff since Defendants' retaliatory actions resulted in the loss of his employment with the Delaware Department of Veterans Affairs.

B. An award of punitive damages against Defendants.

C. Reinstatement of Plaintiff's faculties and endorsement as a Catholic Priest and/or Chaplain.

D. An award of reasonable attorney's fees and costs incurred in pursuing this action;

E. An award of such relief as this court sees just and proper under the circumstances.

## JURY DEMAND

44. Pursuant to Rule 38 of the Federal Rules of Civil Procedures, Plaintiff demands a trial by jury of this action.

Dated: July 19, 2021

## PLAINTIFF HEREBY REQUESTS A TRIAL BY A SIX PERSON JURY

THE IGWE FIRM

/s/ Emeka Igwe, Esquire
Emeka Igwe, Esquire
Two Penn Center
1500 JFK BLVD., Suite 1900
Philadelphia, PA 19102
Phone: 215-278-9898
Fax: 215-893-3812
Email:emeka@igwefirm.com

Attorney for Plaintiff

# Exhibit A



M. Joy Drass, MD
President

# Georgetown University Hospital

Page 25

February 26, 2008

Father Azuka Iwucukwu
Pastoral Care

Dear Father Azuka,

I am in receipt of the enclosed letter from Ms. ▓▓▓▓ ▓▓▓▓ regarding the care you provided to her during her hospitalization this Fall. Georgetown University Hospital strives to deliver Patient First care in all interactions with patients and families. Your compassion and caring were very much appreciated by this patient and her family. You truly made a positive impact on her healing.

Please accept my profound gratitude for embodying the Patient First principles in the care and counseling you provide.

Sincerely,

M. Joy Drass, MD
President

cc: Father Brian Conley, Director
Pastoral Care

MedStar Health
3800 Reservoir Road, NW, Washington, DC 20007-2113
phone: 202 444 3000 • fax: 202 444 3095

#112675
FEB 2 5 2020

January 5, 2008

Page 26

President
Georgetown University Hospital
3800 Reservoir Road, NW
Washington, DC 20007-2113


I am writing this letter to applaud your hospital for the fine job you did when you hired Father Azuka Iwucukwu as a Chaplain. I had the distinct pleasure of meeting and knowing Father Azuka when I was a patient for nearly a month in your behavioral health unit on 5 West. I was in the hospital from approximately October 15, 2007 until November 19, 2007.

Words cannot even do justice to the level of professionalism, compassion and caring which Father Azuka displayed. His ability to very quickly engage me and earn my complete trust speaks volumes for the level of talent that you have at your fine institution. Father Azuka went to what I consider "above and beyond" what was necessary to make sure that I, as a patient, felt truly cared for. This matters - not only to me, but to each and every one of your patients that he personally interacts with on a daily basis.

In order to give you some background: I met Father Azuka when I requested a counseling session with a Chaplain very early during my stay. He was a fantastic counselor and also someone I came to trust implicitly. Father Azuka actually met with my doctors when I felt that I was not communicating my feelings well enough on my own. He also comforted my family by calling them and counseling them as well. My family truly appreciated this, as they were very concerned about my condition. He also followed up to make sure that my needs were being met and that I was recovering.

In my opinion, had I not had such a competent, caring individual like Father Azuka I literally could have ended up needing to stay longer in the hospital. In other words, I feel Father Azuka actually helped me to recover faster as a result of his compassionate competent counseling ability. I wish to express my gratitude to your fine organization and I feel I have Father Azuka to personally thank.

I assure you, I had never met Father Azuka before, and I can also assure you I am not one to write these kinds of letters or to be easily impressed, but I felt this letter was necessary, and frankly overdue.

I took the liberty of writing because I felt, following my experience, that the least that I could do was take some time to write a letter on his behalf and so you know coming from a customer, and Corporate Controller for a $20 million dollar organization what an

# Exhibit B

Page 16

# Jeremiah P. Hanafin

*Polygraph Examiner and Consultant*
*Virginia License No. [illegible]*
*4824 North 13th Road*
*Arlington, VA 22207*

Website: hanafinpolygraphservices.com
Email: jprhanafin@aol.com
Telephone: (703) 597-9032

## POLYGRAPH EXAMINATION REPORT

**Date of Report**
12/19/2018

**Date of Examination**
12/19/2018

**Location of Examination**
601 Pennsylvania Avenue, NW. Washington, D.C.

**Examinee's Name**
Iwuchukwu, Azuka

### Synopsis

On December 19, 2018, Azuka Iwuchukwu reported to 601 Pennsylvania Avenue, NW, Washington, D.C. for the purpose of undergoing a polygraph examination. The examination was to address whether Iwuchukwu ever had sexual intercourse with ███████ ███████ aka ███████ or engaged in any sexual acts with ███████ ███████ is alleging that Iwuchukwu sexually assaulted her when she was a patient at Georgetown University Hospital in 2007 and also at her family's home in Warren County, PA.

Iwuchukwu was then interviewed in an effort to formulate the relevant questions. During this interview, Iwuchukwu denied ever engaging in any sex acts with ███████ or engaging in sexual intercourse with ███████

Following this interview, Iwuchukwu was given a polygraph examination consisting of the following relevant questions:

#### Series I

A. Did you ever engage in any sex acts with ███████ Answer: No
B. Did you ever have sexual intercourse with ███████ Answer: No

Four polygraph charts (which included an acquaintance or "stim" chart) were collected using a Dell Inspiron 15 notebook computer and Lafayette LX4000 software. This software obtained

Examinee's Name: Iwuchukwu E. Azuka
Date: 02.19.2018

Page 17

tracings representing thoracic and abdominal respiration, galvanic skin response, and cardiac activity. All of these physiological tracings were stored in the computer along with the time that the questions were asked as well as text of each question. The format of the test was the two question Federal You Phase Zone Comparison Test (ZCT). As part of a 2011 meta-analysis study done by the American Polygraph Association (APA), the ZCT is one of the polygraph examinations considered valid based upon defined research protocol. As part of the validation process, the APA chose techniques that were reported in the Meta 22 Analytic Survey of Validated Techniques (2011) as having two, independent studies that describe the criterion validity and reliability. The ZCT includes relevant questions addressing the issues to be resolved by the examination, comparison questions to be used in analysis, symptomatic questions, and neutral or irrelevant questions. All questions were reviewed with Iwuchukwu prior to the test. The charts collected were subjected to a numerical evaluation that scored the relative strength of physiological reactions to relevant questions with those of the comparison questions. An analysis was conducted using a three (3) point scale (-1, 0, +1). If reactions were deemed to be greater at the relevant questions, then a negative score was assigned. If responses were deemed to be greater at the comparison questions, then a positive score was assigned. A decision of deceptive is rendered if any individual question score is -3 or less or the grand total of both questions is -4 or less. A decision of non-deceptive is rendered if the grand total of both questions is +4 or more with a +1 or more at each question.

Iwuchukwu' scores utilizing the three (3) point scale are +4 at Question A and +4 at Question B with a total score of +8. Based upon this analysis, it is the professional opinion of this examiner that Lewis' responses to the above relevant questions are **Not Indicative of Deception.**

A second analysis was conducted utilizing a scoring algorithm developed by the Johns Hopkins University Applied Physics Laboratory (PolyScore Version 7.0) which concluded **"No Deception Indicated—Probability of Deception is Less Than .01."**

A third analysis was conducted utilizing a scoring algorithm developed by Raymond Nelson, Mark Handler and Donald Krapohl (Objective Scoring System Version 3) which concluded " **No Significant Reactions- Probability these results were produced by a deceptive person is .001."**

2

Page 27

ethical, honest, and experienced Chaplain has working for them. This personal experience yesterday only solidified, in my mind, why my choice was and will continue to be Georgetown Hospital in the future. Furthermore, I believe this speaks to the level of customer service that you, personally, demand from your employees – this is impressive!

If you would like to talk to me directly I would be more than happy to talk with you. I can be reached Monday through Friday during the hours of 8 a.m - 5 p.m. at ▮▮▮ or after 6 p.m at ▮▮▮

Respectfully,



# Exhibit C



P.10

ARCHDIOCESE FOR THE MILITARY SERVICES, USA
OFFICE OF THE ARCHBISHOP

15 October 2019

The Reverend Azuka Iwuchukwu
259 Christiana Road
New Castle, DE 19720

Dear Father Iwuchukwu,

Thank you for your many messages. It is my regret that you have been held in virtual limbo for so long.

However, the fact that civil authorities in Pennsylvania and the District of Columbia have not taken action is not an acquittal of the accusations. The allegation from Pennsylvania/Georgetown University has not been proven either way, and there has been no acquittal by civil authorities. Unfortunately, the civil authorities have not, and likely will not, investigate the PA/Georgetown allegations because the statutes of limitations in both jurisdictions have run out. Those same authorities have not declared that you are innocent.

Given the gravity of the accusations and after consultation with my advisors, I do not believe that I can endorse you for service in this Archdiocese. As you know, the AMS is under no obligation to grant endorsement or faculties to a priest.

For the same reason, any statement regarding your eventual ministry in another diocese would have to include a mention of the accusation and the inconclusive resolution from the civil authorities. I am afraid that no diocese in the United States would grant you faculties.

I think that the best solution is for you to return to Nnewi, your diocese of incardination, where you do have a right to faculties unless the Bishop would decide otherwise. That is your best hope for continued priestly ministry. I recognize that you journeyed to this country with a desire to serve, but the current circumstances make priestly ministry in this instance in the USA an unviable option.

Although you had hoped for a different response, I deeply regret that I must come to this conclusion. The accusation came from a vulnerable adult, who severely ill, is governed by the essential norms and the Dallas Charter.

I do hope that you will be able to accept this burden and return home.

Sincerely in Christ,

† Timothy P. Broglio

(The Most Reverend) Timothy P. Broglio
Archbishop for the Military Services, USA

PO Box 4469 • WASHINGTON, DC  20017-0469 • TEL  202 719 3600 • FAX: 202 269 9445