**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AZUKA IWUCHUKWU, | |
| Plaintiff, | |
| v. | Case No.: 1:21-cv-01980-RDM |
| ARCHDIOCESE FOR THE MILITARY SERVICES, *et al.* | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES OF THE ARCHDIOCESE FOR THE MILITARY SERVICES, USA AND ARCHBISHOP TIMOTHY P. BROGLIO IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(B)(1) AND RULE 12(B)(6)**

Mark E. Chopko, Esq. (DC 410353)
Walter J. Buzzetta, Esq. (DC 499116)
STRADLEY RONON STEVENS & YOUNG, LLP
2000 K Street, N.W., Suite 700
Washington, DC 20006
(202) 507-6407
(202) 822-0140 (fax)
mchopko@stradley.com
wbuzzetta@stradley.com
*Counsel for Defendants, Archdiocese for the Military Services and Timothy Broglio*

Dated: October 1, 2021

## TABLE OF CONTENTS

I.      INTRODUCTION..................................................................................................1

II.     PROCEDURAL AND FACTUAL BACKGROUND ...........................................2

III.    LEGAL STANDARD ...........................................................................................5

    A.      Plaintiff's Complaint Seeks Relief in Violation of the First Amendment...6

        1.      The Establishment and Free Exercise Clauses of the First Amendment Bar Plaintiff's Claims under Ecclesiastical Abstention...................8

        2.      Plaintiff's Claims Fail under the Ministerial Exception. ...............11

    B.      Plaintiff's Efforts to Avoid the First Amendment Fail to State a Claim. .15

        1.      Plaintiff Fails to State a Claim Under D.C. Section 2-1402.61. .....15

        2.      Plaintiff Fails to State a Claim for *Respondeat Superior*. ...............17

    C.      Dismissal Should be with Prejudice as Amendment is Futile...................17

V.      CONCLUSION ...................................................................................................18

## **TABLE OF AUTHORITIES**

**Cases**                                                                                       **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................5

*Bell Atlantic Com, v. Twombly,*
    550 U.S. 544 (2007) .................................................................................................6

*Bell v. Hood,*
    327 U.S. 678 (1946) .................................................................................................5

*Bible Way Church of Our Lord Jesus Christ of Apostolic Faith of Washington,*
    *D.C. v. Beards,*
    680 A.2d 419 (D.C. 1996) ......................................................................................10

*Bouchard v. New York Archdiocese,*
    No. 04-cv-9978, 2007 WL 2728666 (S.D.N.Y. Sept. 19, 2007) ............................8

*Brown v. Argenbright Sec., Inc.,*
    782 A.2d 752 (D.C. 2001) ....................................................................................17

*Brown v. Whole Foods Mkt. Grp., Inc.,*
    789 F.3d 146 (D.C. Cir. 2015) ................................................................................6

*Burgess v. Rock Creek Baptist Church,*
    734 F. Supp. 30 (D.D.C. 1990) ............................................................................10

*Croyle v. Archdiocese of Military Services,*
    No. 2020-CA-2639-B (D.C. Supr. Ct. Nov. 2, 2020) ...........................................16

*EEOC v. Catholic Univ. of Am.,*
    83 F.3d 455 (D.C. Cir. 1996) ...........................................................................9, 13

*Epps v. U.S. Capitol Police Bd.,*
    719 F.Supp.2d 7 (D.D.C. 2010) ..............................................................................5

*\*Gonzalez v. Roman Catholic Archbishop of Manila,*
    280 U.S. 1 (1929) .........................................................................................7, 11, 12

*Greenawalt v. Archdiocese of San Francisco,*
    No. 15-cv-5077, 2016 WL 232442 (N.D. Cal. Jan. 20, 2016) ..............................14

*Gregorio v. Hoover,*
    238 F. Supp. 3d 37 (D.D.C. 2017) ........................................................................13

*\*Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.,*
    565 U.S. 171 (2012) .......................................................................................... *passim*

*Howell v. Gray*,
    843 F. Supp. 2d 49 (D.D.C. 2012) .......................................................................18

*James Madison Ltd. by Hecht v. Ludwig*,
    82 F.3d 1085 (D.C. Cir. 1996) ............................................................................17

*Katcoff v. Marsh*,
    755 F.2d 223 (2d Cir. 1985)..................................................................................7

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*,
    344 U.S. 94 (1952)......................................................................................10, 12

*McFarland v. George Washington Univ.*,
    935 A.2d 337 (D.C. 2007) ....................................................................................15

*McNutt v. General Motors Acceptance Corp.*,
    298 U.S. 178 (1936)................................................................................................5

*Meshel v. Ohev Sholom Talmud Torah*,
    869 A.2d 343 (D.C. 2005). Civil ..........................................................................10

*Minker v. Baltimore Annual Conference of United Methodist Church*,
    894 F.2d 1354 (D.C. Cir. 1990) ............................................................................10

*NLRB v. Catholic Bishop of Chicago*,
    440 U.S. 490 (1979)................................................................................................9

*Pardue v. Center City Consortium Schs. of the Archdiocese of Wash., Inc.*,
    875 A.2d 669 (D.C. 2005) ....................................................................................11

*Rweyemamu v. Cote*,
    520 F.3d 198 (2d Cir. 2008)..................................................................................13

*Samuel v. Lakew*,
    116 A.3d 1252 (D.C. 2015) ..................................................................................10

*Search v. Uber Tech., Inc.*,
    128 F. Supp. 3d 222 (D.D.C. 2015) ......................................................................17

*Serbian E. Orthodox Diocese v. Milivojevich*,
    426 U.S. 696 (1976)..........................................................................................9, 12

*Smith-Haynie v. District of Columbia*,
    155 F.3d 575 (D.C. Cir. 1998) ................................................................................5

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)..................................................................................................5

*Turner v. Parsons*,
   620 F. Supp. 138 (E.D. Pa. 1985) ........................................................................8

*United Methodist Church, Baltimore Annual Conference v. White*,
   571 A.2d 790 (D.C. 1990) ..............................................................................10

*United States v. Ballard*,
   322 U.S. 78 (1944)...........................................................................................7

*U.S. ex rel. Settlemire v. District of Columbia*,
   198 F.3d 913 (D.C. Cir. 1999)...........................................................................5

*Vogel v. District of Columbia Office of Planning*,
   944 A.2d 456 (D.C. 2008) ..............................................................................15

*Watson v. Jones*,
   80 U.S. 679 (1871).............................................................................7, 11, 12

## Other Authorities

District of Columbia Human Rights Act
   D.C. Code § 2-1401 ..............................................................................6, 11, 15

*First Amendment ....................................................................................... *passim*

Fed. R. Civ. P. Rule 12(b)(1)......................................................................1, 5

Fed. R. Civ. P. Rule 12(b)(6)..................................................................1, 5, 13

Veterans Health Administration Directive, 1111.3.1.c................................7

## Publications

Mark E. Chopko and Marissa Parker, *Still a Threshold Question: Refining The
   Ministerial Exception Post Hosanna-Tabor,* U.N.C. FIRST AMENDMENT L.
   REV. 233, 244, 277 et seq. (May 2012), ...............................................13

Defendants, the Archdiocese for the Military Services, USA (the "Archdiocese") and its Archbishop, the Most Reverend Timothy P. Broglio (the "Archbishop"), by and through their counsel, Stradley Ronon Stevens & Young, LLP, submit this Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) and 12(b)(6). The Complaint challenges a religious decision that, under settled law, is beyond the authority of a civil court to adjudicate. Therefore, this Court lacks subject matter jurisdiction over Plaintiff's claim against the Archdiocese and Archbishop. Likewise, due to its many technical flaws, Plaintiff's Complaint fails to state a claim.

## I.    INTRODUCTION

Plaintiff, Azuka Iwuchukwu ("Plaintiff"), a Catholic priest, brings this action in federal court seeking relief against the Archdiocese and its Archbishop seeking (1) reinstatement of his religious faculties and endorsement to serve as a Catholic priest; and (2) damages as a result of the Archbishop's revocation of the same ecclesiastical endorsement and faculties following allegations of sexual abuse against Plaintiff. In short, Plaintiff alleges that his religious endorsement and faculties should be reinstated because no criminal charges resulted from the sexual abuse allegations. Plaintiff also contends that the Archbishop's decision not to reinstate his religious endorsement and faculties was improper retaliation for Plaintiff having filed a separate discrimination complaint against the U.S. Department of Veterans Affairs.

The Archdiocese and Archbishop move to dismiss the Complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) as Plaintiff's Complaint seeks relief in violation of the First Amendment. First, Plaintiff's Complaint seeks judicial review of a religious action in contravention of ecclesiastical abstention. Next, to the extent that Plaintiff argues that the removal of his ecclesiastical endorsement is "employment," his claim falls entirely within the ministerial exception which

provides that secular courts may not interfere with ecclesiastical hierarchies, church administration and the appointment (and removal) of clergy. A unanimous United States Supreme Court instructed that the ministerial exception ensures that "the authority to select and control who will minister to the faithful – a matter 'strictly ecclesiastical' – is the church's alone." *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171, 195 (2012) (internal citation omitted). Accordingly, there is no basis for this Court to address a claim by a priest for reinstatement of his religious endorsement and faculties by his Church.

In short, adjudicating Plaintiff's claims requires this Court to sit in judgment of the Archdiocese's determination to revoke the Plaintiff's religious endorsement in violation of both the Free Exercise and Establishment Clauses of the First Amendment. These same principles apply to Plaintiff's claims for damages, as "[an] award of such relief would operate as a penalty on the Church for terminating an unwanted minister, and would be no less prohibited by the First Amendment than an order overturning the termination." *Hosana-Tabor*, 565 U.S. at 194. Plaintiff also fails to plead the required elements for his retaliation and *respondeat superior* claims. Accordingly, Plaintiff's complaint both fails to allege a claim within the subject matter jurisdiction of this Court and to state a claim for relief. As any amendment would be futile, the Complaint should be dismissed with prejudice.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed his Complaint against the Archdiocese and Archbishop on July 21, 2021. On consent motion, this Court ordered the Archdiocese and Archbishop to respond to the Complaint no later than October 1, 2021. *See* Dkt. No. 11. The Archdiocese and Archbishop now seek dismissal of the case.

The Archdiocese is an ecclesiastical jurisdiction created by Pope St. John Paul II in 1985 to act as the endorsing agent for Catholic clergy who seek to serve as chaplains in the armed forces, Veterans Affairs hospitals, or in overseas (foreign service) facilities. Catholics who seek to participate in Catholic Mass or receive the sacraments need the assurance that the person ministering to them can do so validly according to the doctrine and law of the Church. Because the government is a secular entity, it lacks the authority to determine whether a cleric is in "good standing" with his or her religious community and therefore may serve as a religious chaplain. Instead, the government looks to the "ecclesiastical endorsement" of a body within each religious tradition to certify such candidates for chaplaincies. An "endorsement" is a religious act, and its grant or refusal is an exercise of religious discretion. Catholic priests require the endorsement of the Archdiocese, given by the Archbishop, to serve as a chaplain in military or Veterans Affairs facilities. Catholic chaplains may also require what are called "faculties," religious permission to celebrate Mass and the sacraments in a particular diocese. It, too, is a religious act and the grant or refusal of faculties is committed to the discretion of the local bishop or archbishop.

Plaintiff is a Catholic priest who was ordained for service in his own Diocese of Nnewi of Nigeria in 1987. By virtue of his ordination, he became incardinated into that Diocese and the Bishop there is his religious superior. At some point in his career, Plaintiff immigrated to the United States and became a citizen. He has never been "incardinated," an ecclesiastical act that relates a priest to a bishop through vows of obedience and service, into any United States diocese. Thus, to serve anywhere outside his home Diocese in the United States, he needed permission ("faculties") from a local bishop wherever he would serve. Plaintiff was a chaplain at Georgetown University Hospital, and obtained his "faculties" from the Archdiocese of Washington in 2006. (Compl. at ¶¶ 10-11). He did not require an "endorsement" of the Archdiocese for the Military

Services because the Georgetown chaplain position was not part of the military, Veterans Affairs, or foreign service. A few years later in 2011, Plaintiff accepted employment with the U.S. Department of Veterans Affairs.[1] At that time, as required by Church law and government regulation, Plaintiff sought and received an ecclesiastical endorsement from the Archdiocese. (Id. at ¶ 12). In 2012, Plaintiff says he filed an EEOC claim against the Department of Veterans Affairs. (Id. at ¶ 15). Plaintiff did not need to and did not communicate that fact to the Archdiocese.

On September 11, 2018, after having been notified that a former patient ("J.V.") made allegations that Plaintiff sexually abused her 11 years earlier, and after review by the Archdiocese, the Archbishop notified Plaintiff in writing that the Archdiocese revoked his faculties and endorsement. (Id. at ¶¶ 20-21). Under the requirements of Church law and procedure, the Archdiocese also reported the allegations to law enforcement authorities. (Id. at ¶ 23). Ultimately, no criminal charges were filed against Plaintiff (Id. at ¶ 28), and Plaintiff requested that his endorsement be restored. By letter dated October 15, 2019, copy attached to the Complaint, the Archbishop informed Plaintiff that:

> Given the gravity of the accusations and after consultation with my advisors, I do not believe that I can endorse you for service in this Archdiocese. As you know, the AMS is under no obligation to grant endorsement or faculties to a priest.

(Id. at ¶ 28 and Ex. C).

Plaintiff alleges that the Archbishop's decision not to reinstate his endorsement and faculties: (1) deprived Plaintiff of a property right under the Fourteenth Amendment without due process; (2) constituted retaliation against Plaintiff for his having filed an EEOC claim against the Department of Veterans Affairs; and (3) the Archdiocese is liable for the actions of the Archbishop

---

[1]  Plaintiff incorrectly identifies the entity as the Delaware Department of Veterans Affairs. In actuality, Plaintiff was employed by the U.S. Department of Veterans Affairs in Delaware.

under the doctrine of *respondeat superior*. (Id. at ¶¶ 32-43). Plaintiff seeks attorney's fees, monetary and punitive damages, and reinstatement of his faculties and endorsement. Under the applicable legal standard, dismissal of all claims is required.

## III.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) tests subject matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis omitted). When a defendant files a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6), this Circuit has held that the court must first examine the Rule 12(b)(1) challenges, *U.S. ex rel. Settlemire v. District of Columbia,* 198 F.3d 913, 920 (D.C. Cir. 1999), because "if it must dismiss the complaint for lack of subject[-] matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined," *Epps v. U.S. Capitol Police Bd.,* 719 F.Supp.2d 7, 12 (D.D.C. 2010); *see also Bell v. Hood,* 327 U.S. 678, 682 (1946) (holding that a motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction). Ultimately, the plaintiff bears the burden of establishing the court's jurisdiction, *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 182–83 (1936), and where subject matter jurisdiction does not exist, "the court cannot proceed at all in any cause." *Steel Co.,* 523 at 94. Further, an affirmative defense may be raised in a pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint. *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the allegations made in a complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Although a complaint does not need to contain detailed factual allegations, "the 'grounds' of [the plaintiffs] 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Com, v. Twombly*, 550 U.S. 544, 555 (2007). As such, the factual allegations must be sufficient to raise a plaintiff's "right to relief above the speculative level." *Id.* at 555. Unsupported legal allegations need not be accepted. *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 151 (D.C. Cir. 2015).

## IV.    ARGUMENT

### A.  Plaintiff's Complaint Seeks Relief in Violation of the First Amendment.

By his Complaint, Plaintiff seeks judicial review of a religious decision. Specifically, Plaintiff asks this Court to inquire as to whether the decision of the Archdiocese and Archbishop in revoking and declining to reinstate his endorsement and the faculties that were part of the endorsement after allegations of sexual misconduct constitute either a violation of due process or improper retaliation under the DC Human Rights Act. Plaintiff's Complaint is subject to dismissal on multiple grounds. First, because the decision to grant or revoke an endorsement or faculties is a religious act, this Court lacks subject matter jurisdiction pursuant to the ecclesiastical abstention doctrine. Review of the actions of the Archbishop and Archdiocese would require the Court to evaluate ecclesiastical decisions in violation of the First Amendment.

Likewise, even if the Court finds subject matter jurisdiction, construing the Complaint as involving an employment relationship also results in dismissal. The First Amendment ministerial exception provides a complete defense to Plaintiff's claims. The United States Supreme Court has determined that a church must be free to choose its clergy. Courts routinely dismiss matters which seek judicial review of a church's decision with respect to clergy selection. Such decisions are not subject to judicial review, and any award of damages as a result of such a decision would likewise

violate the First Amendment. Additionally, Plaintiff fails to state a claim for retaliation or *respondeat superior*. The Complaint should be dismissed with prejudice.

The government is obliged under certain circumstances to provide ministers of religion for people who serve or are cared for by the government – in the military, public hospitals, and prisons. *Katcoff v. Marsh*, 755 F.2d 223, 234 (2d Cir. 1985). If the government did not provide chaplains, those in public institutions might be forced to do without, thus jeopardizing their ability to exercise rights guaranteed under the Bill of Rights. How can the government be sure that the religious services are "authentic" when, as the Supreme Court has said, the government knows neither orthodoxy nor heresy in matters of religion? *United States v. Ballard*, 322 U.S. 78, 86 (1944). The decision about who is or who is not able to minister according to religious law and practice belongs to religious authorities under the Constitution. *Gonzalez v. Roman Catholic Archbishop of Manila*, 280 U.S. 1, 16-17 (1929).

This problem is resolved by the "ecclesiastical endorsement," a means through which a candidate for a chaplain position seeks and obtains certification from the proper ecclesiastical authority that the candidate is "in good standing with the faith group or denomination, and in the opinion of the endorsing official, is qualified to perform the full range of ministry, including all sacraments, rites, ordinances, rituals and liturgies required by members of the faith group." (*Veterans Health Administration Directive*, 1111.3.1.c). On these matters, the government is, by operation of constitutional law, (religiously) incompetent. *Watson v. Jones*, 80 U.S. 679, 729 (1871) ("It is not to be supposed that the judges of the civil courts can be as competent in the ecclesiastical law and religious faith of all these bodies as the ablest men in each are in reference to their own").

There is no doubt that providing or revoking an endorsement or faculties is a religious act. "Faculties are means by which the bishop of a diocese, or archbishop, confers permission to a visiting priest who labors in the diocese for the salvation of souls to hear confessions, say Mass, preach, and administer the sacraments of the Roman Catholic Church. The granting of faculties is a purely religious function." *Bouchard v. New York Archdiocese*, No. 04-cv-9978, 2007 WL 2728666, at n.2 (S.D.N.Y. Sept. 19, 2007). Indeed, "these people who seek the endorsement of the church (in effect, church approval is a condition precedent to being qualified to take a position of a Catholic chaplain) will not provide a service which is secular in nature; rather their function is primarily religious, namely, occupying the position of chaplain." *Turner v. Parsons*, 620 F. Supp. 138, 142 (E.D. Pa. 1985) (holding that for the government to determine who is qualified to serve as chaplain would impermissibly entangle the government in religion).

Here, Plaintiff admits that the Archdiocese granted, revoked, and declined to reinstate his endorsement and faculties. (Compl. at ¶¶ 14, 21 and Ex. C). Plaintiff does not allege that any of these actions was anything but religious in nature. Nor does Plaintiff contend that his position was secular. Moreover, the correspondence with the Archdiocese and Archbishop appended to Plaintiff's complaint confirms that the act was discretionary. *See* Compl. at Ex. C ("As you know, the AMS is under no obligation to grant endorsement or faculties to a priest.") Accordingly, Plaintiff seeks review of a discretionary, religious act undertaken by the Archbishop on behalf of the Archdiocese. Any requested relief thus hinges on judicial review of religious acts.

1. **The Establishment and Free Exercise Clauses of the First Amendment Bar Plaintiff's Claims under Ecclesiastical Abstention.**

The First Amendment provides, in part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Both the Establishment Clause and the Free Exercise Clause "bar the government from interfering with the decision of a religious

group to fire one of its ministers." *Hosanna-Tabor Evangelical Lutheran Church & School v. E.E.O.C.*, 565 U.S. 171, 181 (2012). The Establishment Clause prevents the Government from appointing ministers, and the Free Exercise Clause prevents it from interfering with the freedom of religious groups to appoint their own. *Id*. at 184.

The Archdiocese serves as an endorsing agent for Catholic clergy. Plaintiff contends that the Archdiocese improperly acted in revoking Plaintiff's ecclesiastical endorsement to minister such that the revocation and decision not to reinstate both violated due process and constituted retaliation. Thus, Plaintiff's claims rest on allegations that ask this Court to evaluate the ecclesiastical governance and actions of the Archdiocese. Such review is barred by the First Amendment.

The ecclesiastical abstention doctrine is grounded in a "long line of Supreme Court cases that affirm the fundamental right of churches to 'decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'" *EEOC v. Catholic Univ. of Am.*, 83 F.3d 455, 462 (D.C. Cir. 1996) (quoting *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952)). Accordingly, the doctrine "limit[s] the role of civil courts in the resolution of religious controversies that incidentally affect civil rights," and bars courts from adjudicating matters of "ecclesiastical cognizance." *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 698, 710 (1976). To allow otherwise would create a "substantial danger that the State will become entangled in essentially religious controversies" or that it will "intervene on behalf of groups espousing particular doctrinal beliefs." *Id.* at 709; *see also NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1979) ("It is not only the conclusions that may be reached … which may impinge on

rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to finding and conclusions.")

Civil courts "must be careful not to violate the First Amendment by agreeing to resolve a controversy which, at its heart, concerns religious doctrine and practice." *Samuel v. Lakew*, 116 A.3d 1252, 1257 (D.C. 2015) (citation omitted). "Determination of 'whose voice speaks for the church' is *per se* a religious matter." *Minker v. Baltimore Annual Conference of United Methodist Church*, 894 F.2d 1354, 1356 (D.C. Cir. 1990) (citation omitted) (affirming dismissal of a minister's age discrimination claim under the ecclesiastical abstention doctrine and finding "[w]e cannot imagine an area of inquiry less suited to a temporal court for decision; evaluation of the 'gifts and graces' of a minister must be left to ecclesiastical institutions."); *see also Burgess v. Rock Creek Baptist Church*, 734 F. Supp. 30, 33 (D.D.C. 1990) ("courts have refused to interfere with the basic ecclesiastical decision of choosing the minister or priest of a church.")

"A secular evaluation of procedures that ecclesiastical or canon law requires the church to follow is precisely the type of inquiry the First Amendment prohibits." *United Methodist Church, Baltimore Annual Conference v. White*, 571 A.2d 790, 794 (D.C. 1990) (citation omitted). To interfere in this process, the government violates the free exercise rights of the religious community and jeopardizes constitutional separation of Church and State in violation of the establishment clause. *Kedroff*, 344 U.S. at 116. Thus, the religion clauses "severely circumscribe the role that civil courts may play in the resolution of disputes involving religious organizations." *Meshel v. Ohev Sholom Talmud Torah,* 869 A.2d 343, 353 (D.C. 2005). Civil courts "must be careful not to violate the First Amendment by agreeing to resolve a controversy which, at its heart, concerns religious doctrine and practice." *Bible Way Church of Our Lord Jesus Christ of Apostolic Faith of Washington, D.C. v. Beards,* 680 A.2d 419, 427 (D.C. 1996). "Any attempt by the civil

courts to limit [a] church's choice of its religious representatives would constitute an impermissible burden on the church's First Amendment rights." *Pardue v. Center City Consortium Schs. of the Archdiocese of Wash., Inc.,* 875 A.2d 669, 673 (D.C. 2005).

As noted above, the decision by the Archbishop to revoke and not reinstate Plaintiff's faculties and endorsements was a religious act. Were this Court to address Plaintiff's claims, it would be reviewing the Archbishop's determination. Such review would require this Court to sit in judgment of a purely religious function. For this reason alone, the Court lacks subject matter jurisdiction over Plaintiff's claims.

Additionally, as concerns Plaintiff's retaliation claim, in essence Plaintiff alleges that his endorsement and faculties were revoked and not reinstated for ulterior reasons, *i.e.* retaliation for his E.E.O.C. claim. However, the District of Columbia Court of Appeals has determined that exploration of such a claim necessarily involves the very inquiry into the Archdiocese and Archbishop's decision-making and motivation that the Free Exercise Clause forbids. *Pardue v. Center City Consortium Schools of Archdiocese of Washington, Inc.*, 875 A.2d 669, 674-75 (D.C. 2005) (affirming dismissal of a breach of implied covenant of good faith as barred by the Free Exercise Clause). Indeed, in *Pardue*, the Court of Appeals affirmed the decision of the district court to dismiss a retaliation claim under the DCHRA. *Id*. at 673-74. For these reasons, the case should be dismissed for lack of subject matter jurisdiction.

### 2. Plaintiff's Claims Fail under the Ministerial Exception.

The United States Supreme Court has long demonstrated a particular reluctance to interfere with a church's selection of its clergy. *See, e.g., Watson v. Jones*, 80 U.S. 727 ("whenever the questions of discipline … have been decided by … church judicatories … the legal tribunals must accept such decisions as final, and as binding on them."); *Gonzalez,* 280 U.S. at 16 ("it is the

function of the church authorities to determine what the essential qualifications of a chaplain are and whether the candidate possesses them"); *Kedroff*, 344 U.S. at 116 ("the freedom to select the clergy, where no improper methods of choice are proven, is "part of the free exercise of religion protected by the First Amendment against government interference") (internal quotations omitted); *Milivojevich,* 426 U.S. 696, 717 (1976) ("questions of church discipline and the composition of the church hierarchy are at the core of ecclesiastical concern").

Applying this settled law in 2012, a unanimous Supreme Court expressly concluded that both the Establishment Clause and the Free Exercise Clause of the First Amendment "bar the government from interfering with the decision of a religious group to fire one of its ministers." *Hosanna-Tabor*, 565 U.S. at 181. There, the Court noted that:

> Requiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so, intrudes upon more than a mere employment decision. Such action interferes with internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs. By imposing an unwanted minister, the state infringes with the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments. According the state the power to determine which individuals will minister to the faithful also violates the Establishment Clause, which prohibits government involvement in such ecclesiastical decisions.

*Id*. at 188-89. "When a minister who has been fired sues her church alleging that her termination was discriminatory, the First Amendment has struck the balance for us. The church must be free to choose those who will guide it on its way." *Id*. at 196.

The unbroken line of cases, stretching from *Watson* to *Gonzalez* to *Kedroff* to *Hosanna-Tabor*, bars Plaintiff's direct attack on the Archdiocese and Archbishop. As the Supreme Court observed in *Hosanna-Tabor*, "[b]y requiring the Church to accept a minister it did not want. Such

an order would have plainly violated the Church's freedom under the Religion Clauses to select its own ministers. 565 U.S. at 194.

In applying this "ministerial exception," courts routinely decline to "interfere with ecclesiastical hierarchies, church administration, and appointment of clergy." *Rweyemamu v. Cote*, 520 F.3d 198, 204-5 (2d Cir. 2008) (affirming dismissal for lack of jurisdiction of an employment discrimination claim by a Roman Catholic priest). The D.C. Circuit similarly has "long held that the Free Exercise Clause exempts the selection of clergy from Title VII and similar statutes and, as a consequence, precludes civil courts from adjudicating employment discrimination suits by ministers against the church or religious institution employing them*." E.E.O.C. v. Catholic University of America*, 83 F.3d 455, 461 (D.C. Cir. 1996) (affirming dismissal of a nun's Title VII dispute as precluded under the First Amendment). The ministerial exception ensures that "the authority to select and control who will minister to the faithful-a matter 'strictly ecclesiastical'— is the church's alone." *Hosanna-Tabor*, 565 U.S. at 195 (internal citation omitted). In *Hosanna-Tabor*, *id*. at Note 4, the Supreme Court decided that the "ministerial exception" is an affirmative defense best analyzed under Rule 12(b)(6). *See Gregorio v. Hoover*, 238 F. Supp. 3d 37, 45 (D.D.C. 2017). That lens does not change the result.

The ministerial exception looks to whether a (1) minister disputes a matter raised by his (2) church that (3) arises out of the terms and conditions of his ministry. Mark E. Chopko and Marissa Parker, *Still a Threshold Question: Refining The Ministerial Exception Post Hosanna-Tabor*, 10 U.N.C. FIRST AMENDMENT L. REV. 233, 244, 277 et seq. (May 2012), available at https://www.stradley.com/-/media/files/publications/2012/05/university-of-north-carolina-school-of-law-first-amendment-law-review--chopko--parker.pdf. Here there is no dispute that the Plaintiff is a minister suing his Church for relief related to a religious act – the ecclesiastical

endorsement. Unquestionably, the ministerial exception applies and requires that the matter be dismissed.

Likewise, Plaintiff's claim that he had a "property right" to his religious faculties and endorsement, which was revoked and not reinstated without due process, does not change the result.[2] First, correspondence attached to the Complaint confirms that there is "no obligation to grant endorsement or faculties to a priest." (Compl. at Ex. C). There is no entitlement. Second, the very "property right" at issue falls expressly within the ministerial exception. As noted in *Hosanna-Tabor*, the decision of whom to minister is strictly ecclesiastical and precluded from judicial review.

Indeed, not only is this Court precluded from entering an order reinstating the endorsements and faculties to Plaintiff, it is also precluded from awarding monetary damages. As part of its decision in *Hosanna-Tabor*, the Supreme Court further determined that an award of monetary damages would operate as a penalty on a church for terminating an unwanted minister, and would be no less prohibited by the First Amendment than an order overturning his termination. 565 U.S. at 194. "Such relief would depend on a determination that [the Church] was wrong to have relieved [the Plaintiff] of her position, and it is precisely such a ruling that is barred by the ministerial exception." *Id.* Accordingly, any award of monetary damages is barred by the ministerial exception. Plaintiff fails to state a claim under Count I.

---

[2]    Additionally, Plaintiff's due process claim fails as he does not even allege that either the Archdiocese or Archbishop is a state actor as required to state a claim. *See Greenawalt v. Archdiocese of San Francisco*, No. 15-cv-5077, 2016 WL 232442, at *2 (N.D. Cal. Jan. 20, 2016) (finding that the Archdiocese was not a state actor and there was no nexus between the Archdiocese's termination of an employee and state action). Having failed to allege state action, Plaintiff has not plead a due process claim. The frame as a due process matter is essentially a reinstatement of the basic claim that the Church **must** endorse him to be a chaplain. Nothing could be further from the truth as an expression of the law of both the Church (there is no right to ministry) or the State (for reasons stated in the text).

**B.  Plaintiff's Efforts to Avoid the First Amendment Fail to State a Claim.**

**1.    Plaintiff Fails to State a Claim Under D.C. Section 2-1402.61.**

Likewise, while Plaintiff's retaliation claim would also necessitate improper review of the Archdiocese and Archbishop's religious acts, Plaintiff has also failed to state a claim. The District of Columbia Human Rights Act ("DCHRA") makes it unlawful for an ***employer*** to retaliate against an ***employee*** for opposing an employment practice that is prohibited by the Act. *Vogel v. District of Columbia Office of Planning*, 944 A.2d 456, 463 (D.C. 2008) (emphasis added). An employee may make out a *prima facie* case of retaliation by demonstrating that: (1) he engaged in a protected activity by opposing or complaining about employment practices that are unlawful under the DCHRA; (2) his employer took an adverse personal action against him; and (3) there existed a causal connection between the protected activity and the adverse personnel action. *Id*. Further, to state a claim there must be "substantial evidence" that the retaliation claim is supported by a claim that the employee was engaged in a protected activity. *Id*. at 463-64. Indeed, "a vague charge of discrimination will not support a subsequent retaliation claim." *Id*. at 465. "Employer awareness that the employee is engaged in protected activity is thus essential to making out a prima facie case for retaliation." *Id*. at 464. "It simply defies logic to charge an employer with acting in retaliation for an action of which the employer was not, in fact, made aware." *McFarland v. George Washington Univ.*, 935 A.2d 337, 357 (D.C. 2007).

Plaintiff fails to state a claim for retaliation for numerous reasons. First. Plaintiff is not an employee of the Archdiocese; he had an endorsement that allowed him to serve as an employee of the U.S. Department of Veterans Affairs. Second, Plaintiff does not sufficiently allege a protected activity. Third, Plaintiff fails to allege a causal connection. Each of these failures renders Plaintiff's retaliation claim deficient and subject to dismissal.

First, it is not disputed that a retaliation claim requires an employment arrangement. However, the Archdiocese did not employ Plaintiff. Plaintiff admits that he "accepted an employment offer from the … Department of Veterans Affairs" and the events occurred "during his course of his employment with the … Department of Veterans Affairs." (Compl. at ¶¶ 13-15). Plaintiff acknowledges that he only received an endorsement from the Archdiocese. (Id. at ¶¶ 14-15). However, while an endorsement grants permission to a visiting priest to perform religious acts – it does not constitute employment. *See Croyle v. Archdiocese of Military Services*, No. 2020-CA-2639-B, at *5 (D.C. Supr. Ct. Nov. 2, 2020) (finding that a priest "was not an employee" despite having received an endorsement). The endorsement enables the employment, but does not constitute employment itself. The same would be true of any professional licensing organization – while a professional license may be required in order to gain certain employment, for instance a bar license to practice law, one is not an employee of the licensing board by merely having obtained the license. Indeed, given this background, Plaintiff does not allege that he was employed by the Archdiocese. Accordingly, as he is not an employee, the Archdiocese cannot be an employer who retaliated.

Second, Plaintiff does not allege substantial evidence of a protected activity. Plaintiff merely states that he filed a complaint with the E.E.O.C. alleging "discrimination and hostile work environment." Such vague allegations cannot support a retaliation claim. Merely stating a claim was filed does not provide substantial evidence of that claim or its existence, such that a protected activity can be inferred.

Third, Plaintiff fails to plead the required causation as he does not allege that either the Archdiocese or Archbishop was aware of the EEOC claim. Indeed, the EEOC claim was not made against either the Archdiocese or Archbishop, and Plaintiff does not elaborate on any theory as to

why the Archdiocese or Archbishop would seek to retaliate on behalf of the Department of Veterans Affairs for a separate action filed six years earlier. There is simply no basis to conclude that the Archdiocese acted in retaliation against a non-employee, for a claim raised against another entity, of which the Archdiocese is not alleged to have any knowledge. For all these reasons, Plaintiff's claim for retaliation should be dismissed for failure to state a claim.

### 2. Plaintiff Fails to State a Claim for *Respondeat Superior*.

Plaintiff fails to state a claim for *respondeat* superior. "It is hornbook law that '[u]nder the doctrine of *respondeat superior,* an employer may be held liable for the acts of his employees committed within the scope of their employment.'" *Brown v. Argenbright Sec., Inc.,* 782 A.2d 752, 757 (D.C. 2001) (quoting *Boykin v. District of Columbia,* 484 A.2d 560, 561 (D.C. 1984)). "A claim for vicarious liability under a *respondeat superior* theory consists, therefore, of two prongs: an employer-employee relationship and a tortious act committed by the employee within the scope of his employment." *Search v. Uber Tech., Inc.*, 128 F. Supp. 3d 222, 231 (D.D.C. 2015).

Here, Plaintiff alleges that the Archdiocese is liable for the actions of the Archbishop under the theory of *respondeat superior*. However, while Plaintiff alleges the employment of the Archbishop by the Archdiocese, a fact both Defendants would dispute as a proposition of Church theology and law, Plaintiff fails completely to allege any tortious act committed by the Archbishop. Plaintiff alleges a constitutional and statutory claim, but has not pleaded a tort, or any tortious actions by the Archbishop for the which the Archdiocese could be liable. Accordingly, Plaintiff's claim for *respondeat superior* should be dismissed for failure to state a claim.

### C. Dismissal Should be with Prejudice as Amendment is Futile.

Courts may deny leave to amend and dismiss with prejudice when amendment would be futile. *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). This is the

case where an amended complaint would not survive a motion to dismiss. *Howell v. Gray*, 843 F. Supp. 2d 49, 54 (D.D.C. 2012). Here, this Court lacks subject matter jurisdiction over Plaintiff's claim against the Archdiocese and Archbishop. Likewise, Plaintiff has failed to state a claim for relief. Any amendment would be futile, and the Court should dismiss the Amended Complaint with prejudice.

## V.    CONCLUSION

This Court cannot hear Plaintiff's claims disputing the withholding of a religious act. Judicial review is precluded both on subject matter jurisdiction and ministerial exception grounds. Additionally, Plaintiff's Complaint fails to allege sufficient facts to state a claim against the Archdiocese and the Archbishop. Plaintiff's Complaint should be dismissed with prejudice.

Dated: October 1, 2021                    Respectfully submitted,

/s/ Mark E. Chopko
Mark E. Chopko, Esq. (DC 410353)
Walter J. Buzzetta, Esq. (DC 499116)
STRADLEY RONON STEVENS & YOUNG, LLP
2000 K Street, N.W., Suite 700
Washington, DC 20006
(202) 507-6407
(202) 822-0140 (fax)
mchopko@stradley.com
wbuzzetta@stradley.com
*Counsel for Defendants, Archdiocese for the*
*Military Services and Timothy Broglio*