# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AZUKA IWUCHUKWU | : |
| Plaintiff, | : |
| v. | : |
| ARCHDIOCESE FOR THE MILITARY SERVICES | :Case No.: 1:21-cv-01980-RDM |
| And | |
| TIMOTHY P. BROGLIO | : |
| Defendants. | : |

**MEMORANDUM OF LAW OF POINTS AND AUTHORITIES OF PLAINTIFF, AZUKA IWUCHUKWU IN OPPOSITION TO DEFENDANTS, ARCHDIOCESE FOR THE MILITARY SERVICES AND TIMOTHY P. BROGLIO MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO F.R.C.P. 12(B)(1) and 12(B)(6)**

Emeka Igwe, Esquire
THE IGWE FIRM
1500 John F. Kennedy Blvd.
Philadelphia, PA. 19102
(215) 278 9898
emekaigwe@gmail.com

Dated:  November 5, 2021        *Counsel for Plaintiff, Azuka Iwuchukwu*

# **TABLE OF CONTENTS**

|      |                                                                                                      | Page(s) |
|------|------------------------------------------------------------------------------------------------------|---------|
| I.   | INTRODUCTION………………………………………………………….. | 6 |
| II.  | PROCEDURAL AND FACTUAL BACKGROUND………………….... | 6 |
| III. | LEGAL STANDARD………………………………………………………… | 9 |
|      | 1. F.R.C.P. 12(b)(1): Lack of Subject Matter Jurisdiction………… | 9 |
|      | 2. F.R.C.P 12(b)(6): Failure to State a Claim Upon Which Relief Can be Granted……………………………………………………….. | 9 |
| IV.  | ARGUMENT…………………………………………………………….. | 10 |
|      | A. This Court has Subject Matter Jurisdiction Over the Claims Alleged in Plaintiff's Complaint………………………………………… | 10 |
|      | B. Plaintiff's Complaint Sets Forth a Claim for Under DCHRA 2-1402.61………………………………………………………… | 15 |
|      | C. Plaintiff's Complaint Sets Forth a Claim for Respondeat Superior Liability………………………………………………………… | 18 |
|      | D. Plaintiff's Request for Leave to File a Second Amended Complaint………………………………………………………………. | 18 |
| V.   | CONCLUSION…………………………………………………………….. | 19 |

# **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page(s)**

*Alston v. Parker*,
    363 F.3d 229, 235 (3d Cir. 2004)……………………………… 18

*Armbruster v. Frost*,
    962 F. Supp. 2d 105, 116 (D.D.C. 2013)…………………….. 18

*Barnette v. Chertoff,*
    453 F.3d 513, 515, 372 U.S. App. D.C. 41 (D.C. Cir. 2006)…….. 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007)…………………………………….. 10

*Brady v. Office of the Sergeant at Arms*,
    520 F.3d 490, 494, 380 U.S. App. D.C. 283 (D.C. Cir. 2008)………. 17

*Cannata v. Catholic Diocese of Austin*,
    700 F.3d 169, 171 (5th Cir. 2021)……………………………. 11

*Carpenter v. Federal Nat'l Mortgage Ass'n*,
    174 F.3d 231, 235 n.3, 335 U.S. App. D.C. 395 (D.C. Cir. 1999)….. 16

*CNA v. United States*,
    535 F.3d 132, 139 (3d Cir. 2008)……………………………. 9

*Constitution Party v. Aichele*,
    757 F.3d 347, 357-58 (3d Cir. 2014)…………………………… 9

*EEOC v. Catholic Univ. of Am.*,
    83 F.3d 455, 462 (D.C. Cir. 1996)…………………………….. 10

*Grayson v. Mayview State Hosp.*,
    293 F.3d 103, 108 (3d Cir. 2002)……………………………. 18

*Gregorio v. Hoover*,
    238 F. Supp. 3d 37 (D.D.C. 2017)……………………………. 10

*Gould Elecs. Inc. v. United States*,
    220 F.3d 159, 176 (3d Cir. 2000)……………………………. 9

*Hishon v. King & Spalding*,
    467 U.S. 69, 73 (1984)………………………………………. 10

*Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*,
  565 U.S. 171 (2012)…………………………………………….  *passim*

*In re Schering Plough Corp.*,
  678 F.3d 235, 243 (3d Cir. 2012)……………………………….  9

*Jones v. Bernake*,
  557 F.3d 670, 679, 384 U.S. App. D.C. 443 (D.C. Cir. 2009)…..  17

*Jones v. Han*,
  993 F. Supp. 2d 57 (D. Mass. 2014)……………………………..  9

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*,
  344 U.S. 94, 116 (1952)…………………………………………  10

*Limone v. Condon*,
  372 F.3d 39, 43 (1st Cir. 2004)…………………………………  10

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973)……………………………………………  16-17

*McGrath v. Clinton*,
  666 F.3d 1377, 1380, 399 U.S. App. D.C. 110 (D.C. Cir. 2012)……..  16

*Our Lady of Guadeloupe School v. Morrisey-Berru*,
  140 S. Ct. 2049 (2020)…………………………………………..  13

*Petruska v. Gannon Univ.*,
  462 F.3d 294, 307 (3d Cir. 2006)……………………………….  13

*Propp v. Counterpart Int'l*,
  39 A.3d 856, 863 (D.C. 2012……………………………………..  15-16

*Regan v. Grill Concepts-D.C., Inc.*,
  338 F. Supp. 2d 131, 134 (D.D.C. 2004)…………………………..  16

*Rogan v. Menino*,
  175 F.3d 75, 77 (1st Cir. 1999)………………………………….  9

*Ruiz v. Bally Total Fitness Holding Corp.*,
  496 F.3d 1, 5 (1st Cir. 2007)…………………………………….  9

*Serbian E. Orthodox Diocese v. Milivojevich*,
  426 U.S. 696 (1976)……………………………………………..  10

*E.M. v. Shady Grove Reproductive Science Center, P.C.*
  496 F. Supp. 3d 338, 373 (D.D.C. 2020)………………………….  15-16

*Shane v. Fauver*,
	213 F.3d 113, 116 (3d Cir. 2000)…………………………….	18-19

*Sheppard v. United States,*
	640 F. Supp. 2d 29, 34 (D.D.C. 2009)…………………………	18

*Tex. Dep't of Cmty. Affairs v. Burdine*,
	450 U.S. 248, 252-53 (1981)……………………………………	16-17

*Wiley v. Glassman*,
	511 F.3d 151, 155, 379 U.S. App. D.C. 122 (D.C. Cir. 2007)….	17

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)……………………………………………	9

Fed. R. Civ. P. 12(b)(6)……………………………………………	9

Fed. R. Civ. P. 12(d)………………………………………………	7

D.C. Code 2-1402.61………………………………………………	15-17

Plaintiff, Azuka Iwuchukwu, by and through his counsel, Emeka Igwe, Esquire respond to Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants' contend the Court lacks subject matter jurisdiction to entertain the allegations asserted in plaintiff's complaint and assuming *arguendo*, the Court has subject matter jurisdiction, the Complaint should likewise be dismissed due to its "many technical flaws". Plaintiff opposes the Motion to Dismiss on both grounds and submits the following Memorandum in opposition to the Motion.

I.  **INTRODUCTION**

Plaintiff, Azuka Iwchukwu filed a Complaint against Defendants, Archdiocese for the Military Service and The Most Revered Thomas P. Broglio, its Archbishop. By virtue of this lawsuit, plaintiff is seeking reinstatement of his religious faculties and endorsement to serve as a Catholic Priest. Further, plaintiff seeks damages as a result of Defendant, Broglio's revocation of plaintiff's ecclesiastical endorsement and faculties.

II.  **PROCEDURAL / FACTUAL BACKGROUND**

On July 21, 2021, Plaintiff, Azuka Iwchukwu filed a lawsuit in the United States District Court for the District of Columbia. The named defendants are the Archdiocese for the Military Service and the Most Reverend Thomas P. Broglio. On October 1, 2021, Defendants filed a Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R.C.P. 12(b)(1) and 12(b)(6). (Compl.)

According to Plaintiff's Complaint, Plaintiff was endorsed in 2006 to work as a Catholic Priest and/or Chaplain by the Archdiocese of Washington at Georgetown University

Hospital in Washington, D.C.[1] (Compl. at ¶ 10). In 2007, Plaintiff was assigned to minister to a 29-year-old female with the initial of J.V., who was admitted to Georgetown University Hospital as result of severe mental illness. *Id.* at ¶ 12.

In 2011, Plaintiff received and accepted an employment offer with the Delaware Department of Veterans Affairs and left his employment at Georgetown University Hospital. *Id.* at ¶ 13. In 2012, during the course of his employment with the Delaware Department of Veterans Affairs and while under the endorsement of Archdiocese for Military Services, Plaintiff brought an Equal Employment Opportunity Commission ("EEOC") claim against the Delaware Department of Veterans Affairs due to discrimination and a hostile work environment. *Id.* at ¶ 15.

On or about February 26, 2008, Plaintiff received a letter from the President of Georgetown University Hospital with an enclosed letter from J.V., complimenting Plaintiff for the care that Plaintiff provided to J.V. *Id.* at ¶ 16. On or about August 17, 2018, more than 11 years since her last interaction with Plaintiff, J.V. reported for the first that she had been allegedly sexually abused by Plaintiff at Georgetown University Hospital while she was receiving inpatient mental services. *Id.* at ¶ 17. On or about September 11, 2018, Plaintiff was informed by Archbishop Broglio that J.V. had made allegations of sexual abuse against him. *Id.* at ¶ 20.

---

[1] There are numerous statements made in Defendant's Motion to Dismiss regarding the Factual Background undergirding this case, however, none of these factual statements are contained in plaintiff's complaint. (*See* Defendant's Memorandum, Oct. 1, 2021, at 3.). To the extent defendant makes certain allegations, this would convert the motion to one for summary judgment. If a court converts a motion to dismiss into a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Fed. R. Civ. P. 12(d)*.

Shortly after September 11, 2018, Plaintiff was informed by Archdiocese for Military Services that his faculties and endorsement as a Catholic Priest and/or Chaplain were being revoked as a result of the alleged sexual abuse. *Id.* at ¶ 21. Civil law enforcement officials in Washington D.C. and Pennsylvania did not substantiate any of the alleged rape claims by J.V. and declined to prosecute Plaintiff. *Id.* at ¶ 27.

Despite law enforcement's decision not to prosecute Plaintiff, Archbishop Broglio, in a letter dated October 15, 2019, put an impossible and unconstitutional burden on Plaintiff to have an "acquittal of the accusations" by civil authorities. *Id.* at ¶ 28. Archdiocese for Military Services, despite Plaintiffs request, refused to reinstatePlaintiffs faculties and endorsement. *Id.* at ¶ 29.

As a result of the revocation of Plaintiffs faculties and endorsements, Plaintiff lost his employment with the Delaware Department of Veterans Affairs. Plaintiff has been unable to obtain employment as a Catholic Priest and/or Chaplain dueto the loss of his faculties and endorsement.

In the Complaint, plaintiff seeks redress under the Fourteenth Amendment to the United States Constitution alleging a due process violation as well as claiming retaliation for plaintiff's filing of the E.E.O.C. Complaint against the Department of Veteran Affairs. Plaintiff has sued both the Archdiocese as well as Archbishop Broglio, under a theory of respondeat superior. Plaintiff seeks the reinstatement of his faculties and endorsement along with compensatory damages, punitive damages and attorney's fees.

## III. LEGAL STANDARD

### 1. F.R.C.P. 12(b)(1).

*Rule 12(b)(1)* of the Federal Rules of Civil Procedure mandates the dismissal of an action for "lack of subject matter jurisdiction." A motion to dismiss under F.R.C.P. 12(b)(1) challenging the court's jurisdiction is treated the same as a Rule 12(b)(6) Motion. *Gould Elecs. Inc. v. United States*, 220 F.3d 159, 176 (3d Cir. 2000). A 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *Constitution Party v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014). "In reviewing a facial attack, 'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'" *Id.* at 358 (quoting *In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012). Because a "factual attack" in a Rule 12(b)(1) motion to dismiss addresses the court's power to hear the case, there is no presumption of truthfulness and the court may consider evidence outside the pleadings. *CNA v. United States,* 535 F.3d 132, 139 (3d Cir. 2008). Plaintiff has the burden of persuading the court that it has jurisdiction. *Gould*, 220 F.3d at 178

The motion presents a factual attack upon subject matter jurisdiction, arguing that this Court lacks jurisdiction over the claims. In reviewing a factual challenge, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," even where disputed material facts exist.

### 2. F.R.C.P 12(b)(6).

Under F.R.C.P. 12(b)(6), in deciding whether to dismiss a complaint, a court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonableinferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)); *Jones v. Han*, 993 F. Supp. 2d 57 (D. Mass. 2014). To survive a

9

motion to dismiss, the complaint must merely state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. Dismissal of the complaint is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Limone v. Condon*, 372 F.3d 39, 43 (1st Cir. 2004) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Plaintiff's complaint easily meets this threshold.

IV, **ARGUMENT**

### A. This Court has Subject Matter Jurisdiction Over the Claims Alleged in Plaintiff's Complaint.

Plaintiff brought suit against Defendants, Archdiocese and Broglio for violation of his Fourteenth Amendment right to due process. Defendant claims plaintiff's claims are barred because this Honorable Court lacks subject matter jurisdiction. Defendant contends the First Amendment to the United States Constitution including the Establishment Clause and Free Exercise Clauses of same bar plaintiff's claims under the ecclesiastical abstention doctrine.

In *Gregorio v. Hoover*, 238 F. Supp. 3d 37 (D.D.C. 2017), the Honorable Emmett G. Sullivan discussed the doctrine. Judge Sullivan noted that the ecclesiastical abstention doctrine is grounded in a "long line of Supreme Court cases that affirm the fundamental right of churches to 'decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'" *EEOC v. Catholic Univ. of Am.*, 83 F.3d 455, 462 (D.C. Cir. 1996); (quoting *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116, 73 S. Ct. 143, 97 L. Ed. 120 (1952)). The doctrine "limit[s] the role of civil courts in the resolution of religious controversies that incidentally affect civil rights." *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 710, 96 S. Ct. 2372, 49 L. Ed. 2d 151 (1976).

Plaintiff submits the decision to revoke and not reinstate both plaintiff's faculties and endorsements was not a religious act, rather and act of "retaliation" premised upon plaintiff's filing of an EEOC Complaint against the Department of Veterans Affairs. This is not asking to court to arbitrate or referee a purely religious decision or function, rather, it is asking the court to examine defendants' motivation in refusing to return the faculties and endorsements to plaintiff.

Secondly, defendants' claim plaintiff's claims are barred under the ministerial exception established in *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171 (2012). The ministerial exception "operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar." Id. at 195 n.4. Accordingly, defendants' ministerial exception arguments are properly analyzed under a Rule 12(b)(6), rather than a Rule 12(b)(1) lens. *See Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 171 (5th Cir. 2012).[2]

The related ministerial exception "precludes application of [employment discrimination laws] to claims concerning the employment relationship between a religious institution and its ministers." *Hosanna-Tabor*, 565 U.S. at 188. "The exception . . . ensures that the authority to select and control who will minister to the faithful—a matter strictly ecclesiastical—is the church's alone." *Id.* at 194-95 (internal quotation marks and citation omitted). The Supreme Court has expressed no view on whether the exception bars claims other than employment discrimination claims. *Id.* at 196.

In *Hosanna-Tabor*, the Supreme Court upheld the right of religious institutions "to select and control who will minister to the faithful," thus barring "suits brought on behalf of ministers against their churches, claiming termination in violation of employment discrimination

---

[2] It appears that Plaintiff is moving pursuant to 12(b)(1) with respect to the ministerial exception. As noted above, the motion is properly analyzed by 12(b)(6).

11

laws." *Id.* at 696, 698. The Supreme Court was called on to decide whether the plaintiff, Cheryl Perich (hereinafter referred to as "Perich"), qualified as a "minister." Perich was a called teacher at Hosanna-Tabor Lutheran Church and School ("Hosanna-Tabor"). *Id.* at 700. In order to receive called status, Perich completed theological courses, obtained the endorsement of her local religious district, and passed an oral examination. *Id.* at 699. Upon being commissioned as a called teacher, Perich received the formal title "Minister of Religion, Commissioned." *Id.*

As a called teacher, Perich taught both secular and religion classes. In addition to teaching religion classes four days per week, Perich led the students in prayer three times daily, attended a weekly chapel service, and led the chapel service twice each year. *Id.* at 700. After several years of employment at Hosanna-Tabor, Perich developed narcolepsy and took disability leave. *Id.* Hosanna-Tabor ultimately found a teacher to replace Perich, and the congregation voted to replace her and recommended that she resign. *Id.* Perich refused, and Hosanna-Tabor rescinded her called status and terminated her for "insubordination and disruptive behavior. *Id.*

The Supreme Court unanimously held that the ministerial exception applied to prevent Perich's claim in light of several factors, including "the formal title given Perich by the Church, the substance reflected in that title, her own use of that title, and the important religious functions she performed for the Church." *Id.* at 708. In particular, the Supreme Court called attention to the following facts: (1) Hosanna-Tabor held Perich out as a minister; (2) Perich received theological training followed by a formal process of commissioning; (3) Perich held herself out as a minister of the church; and (4) "Perich's job duties reflected a role in conveying the Church's message and carrying out its mission." *Id.* at 707-08.

In *Hosanna-Tabor*, the Supreme Court declined to "adopt a rigid formula for deciding when an employee qualifies as a minister," noting that its holding was limited to the facts of the case. *Id.*

More recently, the Court addressed the scope of the "ministerial exception" under the religion clauses of the First Amendment. *See Our Lady of Guadeloupe School v. Morrisey-Berru,* 140 S. Ct. 2049 (2020). The First Amendment provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The exception bars claims that would entangle the State in a religious institution's employment of its ministers, or those "who perform[] particular spiritual functions on [the institution's] behalf." *Petruska v. Gannon Univ.*, 462 F.3d 294, 307 (3d Cir. 2006); *see also Hosanna-Tabor Evangelical Lutheran Church & Sch. v, E.E.O.C.*, 565 U.S. 171, 132 S. Ct. 694, 181 L. Ed. 2d 650 (2012)(recognizing the ministerial exception under the First Amendment). Under the ministerial exception, "courts are bound to stay out of employment disputes involving those holding certain important positions with churches and other religious institutions." *Our Lady of Guadalupe*, 140 S. Ct. at 2060.

In *Our Lady of Guadalupe*, the Supreme Court determined that exception protects a religious institution's "autonomy with respect to internal management decisions that are essential to the institution's central mission." *Id.* An integral part of this autonomy is the religious institution's ability to hire individuals to fulfill "key" roles. The Supreme Court determined that the exception is not limited solely to ministers and encompasses individuals who educate students in the applicable faith, as this is a "vital religious duty" for many faiths. *Id.* at 2060, 2066.

Thus, to determine whether the exception applies, courts should not use any "rigid formula" but should instead "take all relevant circumstances into account and to determine whether each particular person implicated the fundamental purpose of the exception." *Id.* at 2067. As a result, the Supreme Court determined that two primary school teachers who taught all subjects, including religion, qualified for the exception because they performed vital religious duties by educating children in the Catholic faith. *Id.* at 2056-59, 66.

The facts at bar are not sufficiently similar to the decision in *Hosanna-Tabor*, such that the ministerial exception does not bar plaintiff's claims. For instance, Perich was terminated for religious reasons, plaintiff was not; he was allegedly terminated for "alleged sexual abuse". Thereafter, plaintiff was not reinstated after being essentially exonerated of the crime. Secondly, it is unclear from a review of the allegations of the complaint and defendant's motion to dismiss exactly what religious duties plaintiff had or how extensive his role was, which should result in the court declining to apply the ministerial exception. Likewise, it is not known, at the early pleading stage how much time plaintiff's religious duties encompassed. Plaintiff submits defendants' have not established plaintiff was a minister for purposes of the ministerial exception. There is no indication from the Delaware Department of Veterans Affairs as to what plaintiff's responsibilities included. The record is silent on this issue. This case is sufficiently distinguishable from *Hosanna-Tabor*. There are simply no marked similarities between this case and *Hosanna-Tabor* such that the ministerial exception should not apply to plaintiff's claims and should result in denial of the Motion to Dismiss, as a matter of law.

### B. Plaintiff's Complaint Sets Forth a Claim for Under DCHRA 2-1402.61

In his complaint, Plaintiff alleges claims under the DCHRA for retaliation, D.C. Code 2-1402.61, Compl. ¶¶ 38-40, as follows:

> 38. Plaintiff was unlawfully retaliated against by Archdiocese for Military Services as a result of his right to file an EEOC claim related to the discrimination he endured at the Delaware Department of Veteran Affairs.
>
> 39. The aforementioned retaliation includes, but is not limited to, refusing to restore Plaintiffs faculties and endorsements despite false and unsubstantiated sexual abuse allegations against Plaintiff.
>
> 40. As a result of losing his endorsements, Plaintiff has lost and has been unable to obtain employment as a Catholic Priest and/or Chaplain.

(Compl. at ¶¶ 38-40.).

These statutes proscribe "employer[s]" from " coerc[ing], threaten[ing], retaliat[ing] against, or interfer[ing]" with any person "in the exercise or enjoyment of . . . any right granted or protected under [the DCHRA]," D.C. Code 2-1402.61(a). More specifically, under section 2-1402.61(a), it is "an unlawful discriminatory practice to . . . retaliate against" any person who exercised his or her rights under the DCHRA or who "aided or encouraged any other person in the exercise or enjoyment of any right granted or protected under [the DCHRA]." D.C. Code 2-1402.61(a) – (b). The DCHRA defines "employer" as "any person who, for compensation, employs an individual" or "any person acting in the interest of such employer, directly or indirectly." D.C. Code § 2-1401.02(10).

As this Court has explained in the past, to establish a *prima facie* case of retaliation under the DCHRA, Plaintiff must show: (1) that he opposed or complained about a discriminatory employment practice (i.e. engaged in a "protected activity"); (2) that defendant took an adverse employment action against him; and (3) that there exists a causal link between the protected activity and the employment action. *See Shady Grove*, 496 F. Supp. 3d at 373 (citing *Propp v.*

*Counterpart Int'l,* 39 A.3d 856, 863 (D.C. 2012)); *Carpenter v. Federal Nat'l Mortgage Ass'n*, 174 F.3d 231, 235 n.3, 335 U.S. App. D.C. 395 (D.C. Cir. 1999). For purposes of the first element, "protected activity[ ] includes opposing or complaining about a practice that one reasonably believes to be unlawfully discriminatory." *Id.*

In analyzing a claim of employment discrimination or retaliation under the DCHRA, this court looks to Title VII and its jurisprudence. *Regan v. Grill Concepts-D.C., Inc.*, 338 F. Supp. 2d 131, 134 (D.D.C. 2004).

The court analyzes Title VII claims under the well-established burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Barnette v. Chertoff*, 453 F.3d 513, 515, 372 U.S. App. D.C. 41 (D.C. Cir. 2006). Under this framework, the plaintiff has the initial burden of proving, by a preponderance of the evidence, a *prima facie* case of discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). In order to do so, the plaintiff must demonstrate that she: (1) is a member of a protected class; (2) suffered an adverse employment action; and (3) the challenged adverse action gives rise to an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802. "To prove unlawful retaliation, a plaintiff must show: (1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice." *McGrath v. Clinton*, 666 F.3d 1377, 1380, 399 U.S. App. D.C. 110 (D.C. Cir. 2012).

While the plaintiff maintains the burden of persuasion at all times, *Burdine*, 450 U.S. at 253, once she establishes a *prima facie* case of discrimination, the burden of proof "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the [action in

question],'" *Wiley v. Glassman*, 511 F.3d 151, 155, 379 U.S. App. D.C. 122 (D.C. Cir. 2007) (quoting *Burdine*, 450 U.S. at 253). In asserting a legitimate, non-discriminatory justification for the challenged actions, the defendant "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254 (citation omitted). Ordinarily, the burden then shifts back to the plaintiff to demonstrate that the asserted reason is a pretext for discrimination. *Id.* at 253. However, where the defendant provides a legitimate, non-discriminatory explanation for its actions at the summary judgment stage, "the district court need not—and should not—decide whether the plaintiff actually made out a *prima facie* case under *McDonnell Douglas*." *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494, 380 U.S. App. D.C. 283 (D.C. Cir. 2008). Instead, the court's focus is whether the plaintiff produced "sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the [plaintiff] on [a prohibited basis]." *Id.*; *see also Jones v. Bernanke*, 557 F.3d 670, 679, 384 U.S. App. D.C. 443 (D.C. Cir. 2009).

Plaintiff has successfully alleged oppositional conduct that is prohibited by the DCHRA. See D.C. Code 2-1402.61(b) (prohibiting employers from retaliating against a person "because that person has opposed any practice made unlawful by this chapter").

### C. Plaintiff's Complaint Sets Forth a Claim for Respondeat Superior Liability.

Secondly, plaintiff has stated a claim under the respondeat superior theory. Under the doctrine of *respondeat superior*, defendant is vicariously liable for torts committed by its police officers while acting within the scope of their employment. *See Armbruster v. Frost*, 962 F. Supp. 2d 105, 116 (D.D.C. 2013) (citation and quotation omitted); *see also Sheppard v. United States*, 640 F. Supp. 2d 29, 34 (D.D.C. 2009) ("There are two requirements to establish respondeat superior liability: (1) the existence of an employer-employee relationship, and (2) the tortious conduct occurs while the employee is acting within the scope of his employment."). At the pleading stage, i.e., motion to dismiss, plaintiff has alleged sufficient facts to establish a claim for respondeat superior. The court should deny the motion to dismiss.

### D. Plaintiff's Request for Leave to File a Second Amended Complaint.

In the event this Court dismisses Plaintiff's Complaint or varying counts of the Complaint, or some variant thereof, Plaintiff would respectfully request leave of Court to file an Amended Complaint to state facially plausible claims in those respective Counts. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (stating that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile" (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002))).

In *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000), the Court noted that in dismissing a claim for failure to state a claim:

> We suggest that district judges expressly state, where appropriate, that the plaintiff has leave to amend within a specified period of time, and that application for dismissal of the action may be made if a timely amendment is not forthcoming within that time. If the plaintiff does not desire to amend, he may file an appropriate notice with the district

> court asserting his intent to stand on the complaint, at which time an
> order to dismiss the action would be appropriate.

*Id.* at 116. Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility. *Id.* at 115.

This Honorable Court should grant plaintiff leave to amend plaintiff's complaint as the curative amendments would not be inequitable, futile or untimely. There is no bad faith, undue delay, prejudice or futility with respect to this request.

## V. **CONCLUSION**

Therefore, for all of the foregoing reasons, it is respectfully requested this Honorable Court deny Defendants' Motion to Dismiss pursuant to Fed. R.C.P. 12(b)(1) and 12(b)(6).

Date: November 5, 2021                              Respectfully submitted,


/s/Emeka Igwe
THE IGWE FIRM
1500 John F. Kennedy Blvd.
Philadelphia, PA. 19102
(215) 278 9898
emekaigwe@gmail.com

Dated: November 5, 2021                             *Counsel for Plaintiff, Azuka Iwuchukwu*