IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AZUKA IWUCHUKWU,<br><br>    Plaintiff,<br>v.<br><br>ARCHDIOCESE FOR THE MILITARY SERVICES, *et al.*<br><br>    Defendants. | Case No.: 1:21-cv-01980-FYP |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants, the Archdiocese for the Military Services, USA (the "Archdiocese") and Archbishop Timothy P. Broglio[1] (the "Archbishop"), by and through counsel, submit this Reply Brief in further support of their Motion to Dismiss the Complaint of Azuka Iwuchukwu ("Plaintiff"). Plaintiff's response (the "Opposition") fails to demonstrate why his claim is not completely barred by the First Amendment, to remedy the numerous legal deficiencies in the claims alleged, and to explain why granting leave to file an amended complaint would not be an exercise in futility. This matter should be dismissed with prejudice.

**ARGUMENT IN REPLY**

Plaintiff's Opposition does not overcome the simple fact that the First Amendment bars Plaintiff, a Catholic Priest, from obtaining an order from any civil Court directing the Archdiocese to reverse its religious determination about his suitability to serve as a priest/chaplain and to reinstate him to religious service. Likewise any damages for the revocation of that same religious permission, called "faculties" that would follow from another religious decision, revoking his ecclesiastical endorsement, both of which are committed to the complete discretion of the

---

[1] The Archbishop is Timothy P. Broglio, as identified in the Complaint, and despite Plaintiff's references to Thomas P. Broglio in the Opposition.

1

Archbishop, would essentially be punishment for the defendants' exercise of a protected constitutional right. The very request (judicial review of an ecclesiastical act) and relief sought (compelled appointment of a minister) violate the First Amendment. Plaintiff's proffered authorities do not change the applicable law or impact of the requested relief. Plaintiff's claims are legally barred and deficient, dismissal is required, and amendment would be futile.

## I.     Plaintiff's Claims Fail Under the Ministerial Exception.

The ministerial exception ensures that "the authority to select and control who will minister to the faithful – a matter 'strictly ecclesiastical'—is the church's alone." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 195 (2012) (internal citation omitted). Decisions of religious entities about the appointment and removal of ministers are beyond the ken of civil courts. Rather, such courts must defer to the decisions of religious organizations "on matters of discipline, faith, internal organization, or ecclesiastical rule, custom or law." *Bell v. Presbyterian Church (U.S.A.)*, 126 F.3d 328, 331 (4th Cir. 1997) (citing *Serbian E. Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 713 (1976)). The "focus under the ministerial exception is on the action taken, not possible motives," *EEOC v. Catholic Univ. of Am.,* 83 F.3d 455, 465 (D.C. Cir. 1996), and thus a court "may not inquire whether the reason for [the adverse employment action] had some explicit grounding in theological belief." *Rayburn v. Gen. Conference of Seventh–day Adventists,* 772 F.2d 1164, 1168 (4th Cir. 1985).

In his attempt to avoid this clear bar, Plaintiff contends (1) his termination was not related to performance of religious acts and (2) he has not alleged any religious duties and thus his position (which he does not dispute is a Catholic priest chaplain performing the sacraments of the Church) could be deemed "secular." (Dkt. No. 16 at 14.). Neither argument is persuasive. First, application of the ministerial exception does not turn on the reason for termination, as that concerns the

motives and not the action taken. Rather, the ministerial exception looks to whether a (1) minister disputes a matter raised by his (2) church that (3) arises out of the terms and conditions of his ministry. Mark E. Chopko and Marissa Parker, *Still a Threshold Question: Refining The Ministerial Exception Post Hosanna-Tabor*, 10 U.N.C. FIRST AMENDMENT L. REV. 233, 244, 277 (May 2012), available at https://www.stradley.com/-/media/files/publications/2012/05/university-of-north-carolina-school-of-law-first-amendment-law-review--chopko--parker.pdf.  Plaintiff's claim fails every prong of this analysis: he states he is suing for "reinstatement of his religious faculties and endorsement to serve as a Catholic Priest." (Dkt. No. 16 at 6.) Plaintiff is a Catholic priest (Compl. at ¶¶ 11, 14, 21). The Archdiocese is a religious jurisdiction and its Archbishop for these purposes is his religious superior. (*Id*. at 14, 21, 29 and at Ex. C).[2] And, the decision of the Archbishop to revoke and refuse to reinstate Plaintiff's religious faculties and endorsement were religious acts. (Compl. at Ex. C).

"Because the appointment [of a chaplain] ***is a canonical act***, it is the function of the church authorities to determine what the essential qualifications of a chaplain are and whether the candidate possesses them." *Gonzalez v. Roman Catholic Archbishop of Manila,* 280 U.S. 1, 7 (1929) (emphasis added). "These people who seek the endorsement of the church (in effect, church approval is a condition precedent to being qualified to take a position of a Catholic chaplain) ***will not provide a service which is secular in nature; rather their function is primarily religious***, namely, occupying the position of chaplain." *Turner v. Parsons*, 620 F. Supp. 138, 142 (E.D. Pa.

---

[2] The Archdiocese for Military Services "issues, updates and withdraws ecclesiastical endorsements, which are relied upon by the VA in their hiring processes." *Ezeh v. McDonald*, No. 13-cv-6563, 2016 WL 1254012, at *1 (W.D.N.Y. Mar. 14, 2016) (citing and quoting *Murphy v. Derwinski,* 990 F.2d 540, 545.(10 Cir. 1993), for the premise that "[t[he endorsements are used by the VA to provide 'ample safeguard that VA chaplains will be sufficiently trained to provide patients with those religious services the church, not the VA, finds necessary.'") Report and recommendation adopted at *Ezeh v. McDonald*, No. 13-cv-6563, 2016 WL 1271513 (W.D.N.Y. Mar. 30, 2016).

1985) (emphasis added). *Turner* involved a disappointed Catholic priest as a VA hospital chaplain applicant who did not receive an endorsement from the Military Vicariate, the predecessor religious authority to the Archdiocese for the Military Services. The court determined that an ecclesiastical endorsement was an act where "the church seeks to control factors which control its religious destiny and those who may represent it." *Id*. Thus, "for the government to determine who is qualified from the various religious faiths to lead the flock of Catholicism would be for the government to impermissibly interfere or entangle itself in religion." *Id*. at 143.

Whether the ministerial exception applies turns in part on "what an employee does" and where the employee has a role in "conveying the Church's message and carrying out its mission" they will be deemed a minister. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2063-64 (2020). Plaintiff is an ordained Catholic priest, and, as clergy, his "primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship." *Bell v. Presbyterian Church (U.S.A.)*, 126 F.3d 328, 332 (4th Cir. 1997) (quoting *Rayburn v. General Conference of Seventh–day Adventists,* 772 F.2d 1164, 1169 (4th Cir. 1985). The position of chaplain is a "primarily a 'ministerial' position; the performance of secular activities in that role does not diminish its religious nature." *Scharon v. St. Luke's Episcopal Presbyterian Hosp.*, 929 F.2d 360, 363 (8th Cir. 1991) (applying the ministerial exception to a chaplain's discrimination claims against a religious hospital). It is beyond dispute that the position of Priest chaplain *is* religious. *Turner*, 620 F. Supp. at 142.

Finally, in an attempt to defeat this Motion, Plaintiff claims that the motion is really one for summary judgment. For purposes of the Motion under Rule 12(b)(6), however, every element needed for dismissal under the ministerial exception is pleaded in the Complaint. As noted in Point II, below, even if the ministerial exception was not established on the pleadings, the ecclesiastical

abstention doctrine bars the claim for lack of subject matter jurisdiction. Thus, where it is undisputed that a priest is suing his religious supervisor to compel a religious act, it is difficult to imagine a clearer case in which to dismiss the complaint by operation of the First Amendment's ministerial exception.

## II. Ecclesiastical Abstention Applies to Bar Plaintiff's Claim.

Even if there were some ground to ignore the sweep of the ministerial exception, this case would be barred through application of the more general legal principle referred to as "ecclesiastical abstention." The "determination of whose voice speaks for the church is **per se** a religious matter." *Minker v. Balt. Annual Conference of United Methodist Church*, 894 F.2d 1354, 1356 (D.C. Cir. 1990) (emphasis in original) (citation omitted). Accordingly, as it is beyond dispute that Plaintiff occupied a religious position – *i.e.* Catholic Priest chaplain – and that the Archbishop's grant or revocation of endorsement is a religious act, this matter should be dismissed for lack of subject matter jurisdiction under ecclesiastical abstention.

Under Rule 12(b)(1), Plaintiff has the burden to prove subject matter jurisdiction where it is properly challenged.[3] Plaintiff does not dispute that he seeks review of the Archbishop's determination to revoke his religious permission to serve as a Catholic chaplain. He encourages this Court to sidestep that determinative fact by suggesting that the decision was not "purely" religious and that a review of the Archbishop's motivation is required. (Dkt. No. 16 at 11.).

---

[3] As Plaintiff concedes in his Opposition, because a "factual attack" in a Rule 12(b)(1) motion to dismiss addresses the court's power to hear the case, there is no presumption of truthfulness and the court may consider evidence outside the pleadings. *CNA v. United States*, 535 F.3d 132, 139 (3rd Cir. 2008) (Dkt. No. 16 at 9.); *See also Erby v. U.S.*, 424 F. Supp. 2d 180, (D.D.C. 2006) (If a movant challenges the factual basis for jurisdiction, "the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant," but "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss.") (quoting *Phoenix Consulting Inc. v. Republic of Angola,* 216 F.3d 36, 40 (D.C. Cir. 2000).

Plaintiff offers no legal support for this argument. In fact, to allow Plaintiff this liberty compounds the constitutional error. In case law developed prior to the recognition of a ministerial exception by the Supreme Court, the D.C. Court of Appeals determined that assessing a retaliation claim by clergy "would require the very inquiry into the Archdiocese's motivation that the Free Exercise Clause forbids." *Pardue v. Center City Consortium Schs. of the Archdiocese of Wash., Inc.*, 875 A.2d 669, 673 (D.C. 2005).[4] That in turn entangles this Court in speculating about the nature and content of a religious act. As the Supreme Court said, "[t]he resolution of such charges ... will necessarily involve inquiry into the good faith of the position asserted by the clergy-administrators.... It is not only the conclusions that may be reached ... which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry." *N.L.R.B. v. Catholic Bishop of Chi.*, 440 U.S. 490, 502 (1979). For that reason, the D.C. Circuit in *Minker* agreed, "[w]e cannot imagine an area of inquiry less suited to a temporal court for decision; evaluation of the 'gifts and graces' of a minister must be left to ecclesiastical institutions." 489 F.2d. at 1357. It is clear that deciding the claim is an unconstitutional exercise.

### III. Plaintiff Fails to State a Claim.

As noted in Defendants' Motion, apart from the constitutional barriers to relief, each of Plaintiff's counts is legally deficient. First, even if Plaintiff's due process claim was not subject to both ecclesiastical abstention and the ministerial exception, Plaintiff has not alleged how either the Archdiocese or Archbishop is a state actor as required to state a claim. Next, Plaintiff admits that for a retaliation claim he must plead an employer-employee relationship. Plaintiff also admits that

---

[4] Defendants made this argument in their opening motion (Dkt. No. 13-2 at 11), and Plaintiff did not address it in his Opposition. Where a party fails to respond to arguments in opposition papers, the Court may treat those specific arguments as conceded." *Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 201 (D.D.C. 2009).

an employer is defined as "any person, who for compensation, employs and individual." D.C. Section 2-1402.02(10). Plaintiff does not allege he received compensation from the Archdiocese, and accordingly he does not allege an employer-employee relationship.[5] Additionally, Plaintiff did not respond to Defendants' arguments that he failed to sufficiently allege a protected activity and failed to allege a causal connection. Finally, Plaintiff admits that a claim for *respondeat superior* requires allegation of an underlying tort, but again does not identify any tort alleged.

### IV.     Amendment Would Be Futile.

A district court "may dismiss a claim with prejudice when amending the complaint would be futile." *Vince v. Mabus*, 956 F. Supp. 2d 83, 92 (D.D.C. 2013) (citing *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (dismissal with prejudice appropriate when "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency"). While Plaintiff requests leave to amend his Complaint, he does not offer any argument for how the above deficiencies could be addressed, let alone cured. Indeed, Plaintiff would remain a Catholic Priest seeking to advance claims in a civil court against the Archdiocese and Archbishop concerning his qualification and/or entitlement to religious endorsement and faculties.

### CONCLUSION

For all of the foregoing reasons, and for those set forth in their Motion to Dismiss the Complaint and the accompanying Memorandum of Points and Authorities in support thereof, Defendants the Archdiocese and the Archbishop respectfully request that this Court grant the

---

[5] To the extent Plaintiff alleges the language "any person acting in the interest of such employer, directly or indirectly" creates an employer-employee relationship in this instance, such language covers whether individuals at a company can be personally liable for violations of the DCHRA, *i.e.* whether a manger can be treated as an employer for taking a discriminatory act against an employee. *Bilal-Edwards v. United Planning Organization*, 896 F. Supp. 2d 88, n.13 (D.D.C. 2012).

7

Motion and dismiss Plaintiff's Complaint with prejudice and that the Court grant such other and further relief as the Court deems just and proper.

Defendants request the Court set a hearing for oral argument on this motion.

Dated: November 17, 2021

Respectfully submitted,

*/s/ Mark E. Chopko*
Mark E. Chopko, Esq. (DC 410353)
Walter J. Buzzetta, Esq. (DC 499116)
STRADLEY RONON STEVENS & YOUNG, LLP
2000 K Street, N.W., Suite 700
Washington, DC 20006
(202) 507-6407
(202) 822-0140 (fax)
mchopko@stradley.com
wbuzzetta@stradley.com
*Counsel for Defendants, Archdiocese for the Military Services and Timothy Broglio*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2021, I caused the foregoing document to be electronically filed with the Clerk of the Court, which caused it to be served on all counsel of record.

*/s/ Walter Buzzetta*
Walter Buzzetta

5388479